IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 11-30043 |
| ) | |
| RAKESH WAHI, ) | |
| ) | |
| Defendant. ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on Defendant Rakesh Wahi's pro se Petition for Expungement of Record (d/e 86). On April 16, 2015, this Court held an evidentiary hearing at which the Court gave the parties the opportunity to present evidence. Following the hearing, the Court took the matter under advisement. The Court now DENIES the Petition. Defendant has failed to show that the dangers of unwarranted adverse consequences outweigh the public interest in maintenance of the records.

# I. BACKGROUND

Defendant was originally charged in July 2011 by way of Indictment. See Indictment (d/e 7). On October 4, 2012, the grand jury returned a Superseding Indictment charging Defendant with conspiracy to commit health care fraud with co-Defendant Gautam Gupta, mail fraud, and health care fraud. Superseding Indictment (d/e 60). Defendant Gupta fled the country and is believed to be in India. See Am. Mot. to Unseal ¶ 2 (d/e 5) (filed June 17, 2011).

On October 11, 2012, the Government filed a Motion for Leave to Dismiss Indictment Against Defendant Wahi (d/e 77). The basis for the motion was that the Government received, pursuant to a search warrant, e-mails from Defendant's internet service provider (Microsoft) that included privileged communications between Defendant and his attorney. Despite efforts to filter those e-mails without viewing them and to remove them from the government computers, Federal Bureau of Investigations (FBI) Special Agent Kory Bakken accessed one or more of the privileged e-mails and the privileged e-mails remained on a government computer. Id.

The Government described the breach as minimal and unintentional, but believed it was impossible to determine whether Agent Bakken's access to privileged communications spread in any manner to others on the prosecution team because Agent Bakken was involved in daily trial preparation. Id. Therefore, the Government was unable to show that the information did not taint the prosecution. As such, the Government moved to dismiss the Indictment. Id.

On October 12, 2012, the Court granted the Government's motion. See October 12, 2012 Text Order. The Court found that violations of the attorney-client privilege occurred and dismissal of the Indictment with prejudice was appropriate. Id.

On January 12, 2015, Defendant filed the Petition at issue herein (d/e 86). Defendant asserts that he is qualified as a cardiac surgeon and has been unable to find meaningful employment in his profession due to the existence of the record in this case. Defendant asks that the records in this case be expunged and that the FBI be directed to "remove all of the information from its public records while allowing it (the FBI) to maintain a confidential record of the arrest and its complaint." Pet. at 3 (d/e 86). Defendant

subsequently filed a Reply (d/e 93) raising numerous additional claims, including claims that the grand jury was not racially balanced and claims of governmental misconduct.

On April 6, 2015, this Court entered an Opinion finding that the Court had jurisdiction over the request to expunge the judicial records but lacked jurisdiction over the request to expunge records maintained by the executive branch, such as the FBI. See Opinion at 9 (d/e 99); see also United States v. Janik, 10 F. 3d 470, 472 (7th Cir. 1993) (a district court is without jurisdiction to order any executive branch agency to expunge records). Therefore, the only records at issue in this case are the judicial records.

The Court set the matter for an evidentiary hearing. At the hearing, Defendant appeared pro se. Defendant was sworn, and he argued in support of his Petition.

## II. LEGAL STANDARD

The Seventh Circuit requires that the Court apply a balancing test to determine whether to expunge judicial records:

> "[I]f the dangers of unwarranted adverse consequences to the individual outweigh the public interest in maintenance of the records, then expunction is appropriate."

United States v. Flowers, 389 F.3d 737, 739 (7th Cir. 2004) (quoting Janik, 10 F.3d at 472). The public interest in maintaining accurate records is strong. Flowers, 389 F.3d at 739. "Records relating to a person's criminal conduct are vital tools to law enforcement." Id. In fact, there is a "long tradition of open proceedings and public records, which is the essence of a democratic society." Id.; see also, e.g., United States v. Linn, 513 F.2d 925, 927 (10th Cir. 1975) (noting that the Government has an interest in maintaining records to aid in general law enforcement and this interest must be balanced against the individual's right of privacy); Doe v. Webber, 606 F.2d 1226, 1231 n.15 (D.C. Cir. 1979) (except in cases where the charges are dismissed because no crime was committed or the defendant was not implicated in the commission of the crime, the arrest records may be needed "for investigatory purposes in the event that another, similar, offense is committed").

The unwarranted adverse circumstances must be "uniquely significant" and "truly extraordinary" to outweigh the strong public interest in maintaining accurate records. Flowers, 389 F.3d at 739. Consequences that result from every arrest and conviction

are not the type of unwarranted adverse consequences that justify expunging a defendant's criminal records. Id. As such, expunction is an extraordinary remedy and the balance rarely tips in favor of expunging the records. Id. (also citing cases for the proposition that an acquittal does not automatically justify expunction).

## III. ANALYSIS

Having considered the pleadings and the evidence presented at the hearing, the Court finds Defendant has failed to show that the dangers of unwarranted adverse consequences outweigh the public interest in maintenance of the records.

**A. Defendant's Employment Problems Do Not Outweigh the Public's Interest in Maintaining Criminal Records**

Defendant argues that his record of indictment and arrest on charges involving his profession have "negative consequences for future employment." Pet. at 1 (d/e 86). Defendant asserts that, despite having served in the armed forces in the past and despite being fully credentialed for his profession, his "application for reenlistment has been languishing for three years." Def.'s Supp. at 16 (d/e 93). Dozens of professional recruiters have expressed a

need for Defendant's services, yet Defendant has not received any job offers.  Id.  Defendant further argues that "[p]ublic interest in returning a qualified professional to his previously world[-]renowned research activities and to patient care far outweighs any potential harm that may occur by expungement."  Id. at 17.

At the hearing, Defendant explained his employment situation and his purported difficulties in obtaining meaningful employment at the hearing.  Defendant currently works in a nursing home.  Defendant explained that due to the Indictment and arrest record, he has been told he will not be able to get the security clearance needed to return to the Army.  His former employment with a relative ended by mutual agreement after Defendant was unable to attract research funding.  One potential employer asked Defendant about the criminal case and told Defendant that the dismissal was a technical dismissal and not an exoneration.

The Government argues that Defendant's showing of adverse consequences is weak and unsubstantiated and does not outweigh the public's interest in maintaining the accuracy of judicial

records. According to the Government, Defendant has not shown that the judicial record is adversely affecting his employment search. The Government further argues that "the Seventh Circuit has rejected employability as an unwarranted consequence." Gov't Resp. at 11 (d/e 88).

Defendant has not shown, beyond his own testimony, that the judicial records regarding Defendant's arrest and Indictment are the cause of Defendant's difficulty in obtaining meaningful employment. Regardless, even assuming the judicial records are affecting Defendant's employment, the inability to obtain employment is generally not considered an unwarranted adverse consequence.

Consequences that result from every arrest and conviction are not the type of unwarranted adverse consequences that justify expunging a defendant's criminal records. Flowers, 389 F.3d at 739. As noted by the Seventh Circuit in Flowers, it is likely that anyone with an arrest or conviction record will have difficulty finding employment. Id. However,

> if employment problems resulting from a criminal record were "sufficient to outweigh the government's interest in maintaining criminal records, expunction would no

> longer be the narrow, extraordinary exception, but a generally available remedy."

Flowers, 389 F.3d at 739-40 (finding expunction not warranted where the defendant's conviction was valid and she did not provide any evidence of the actual loss of employment opportunities; the fact that the defendant had done constructive things with her life since her conviction did not warrant expunction) (quoting United States v. Smith, 940 F.2d 395, 396 (9th Cir. 1991)); see also Janik, 10 F. 3d at 472-73 (finding expunction was not warranted where the defendant's conviction was overturned for violations of the Speedy Trial Act and the defendant had been rejected for employment because of his record); but see Diamond v. United States, 649 F.2d 496, 499 (7th Cir. 1981) (remanding for the trial court to develop a factual record where the defendant sought to expunge records referencing a 17-year-old indictment and arrest that were dismissed by the Government after one of the co-defendants pleaded guilty; the Court found that this was the only time the defendant had been charged with a crime and noted "[i]n these days of employer awareness of high recidivism, this truly may present an 'unusual' or 'extreme' case"). In fact, the Janik

court specifically cited Scruggs v. United States, 929 F.2d 305 (7th Cir. 1991), for the proposition that defendant Scruggs was found not guilty and the court still found the defendant was not entitled to expunction under any approach. See Janik, 10 F.3d at 473.

Defendant relies on United States v. Bohr, 406 F. Supp. 1218 (E.D. Wis. 1976), to support his request for expunction. In Bohr, the defendant sought expunction of his records after the court ordered the indictment against him dismissed. The court granted the request, noting that the defendant's arrest record could be "a source of embarrassment or misunderstanding" to the detriment of the defendant's profession as an attorney. Id. at 1220. The court also found nothing to suggest that the records were "needed in the interest of law enforcement." Id.

However, in Bohr, the Government did not object to the request. Moreover, the reasoning of Bohr is called into question in light of the Seventh Circuit's more recent pronouncement in Flowers that difficulty in obtaining employment is not an unwarranted adverse consequence. See, e.g., United States v. Rowlands, 451 F.3d 173, 179 (3rd Cir. 2006) (recognizing that in

light of <u>Flowers</u>, the analysis in <u>Bohr</u> is incorrect). For these reasons, the Court finds <u>Bohr</u> unpersuasive.

Therefore, Defendant has not shown that his purported difficulty in obtaining employment is an unwarranted adverse consequence that outweighs the strong public interest in the maintenance of the records.

**B. Defendant Has Not Demonstrated Other Circumstances that Would Warrant Expunction**

Defendant also makes a number of claims challenging the grand jury proceedings and the conduct of the Government both toward Defendant and co-defendant Gupta.

Defendant argues that the grand jury was racially imbalanced, that his case was the only case where a medical practice located in a different district was prosecuted in the Central District, and that the Government elicited false testimony from its witnesses before the grand jury. Defendant claims that a Chicago grand jury would have been more racially diverse.

Defendant accuses the Government of making racially and ethnically-charged comments and threatening employees of the Nutrition Clinic (owned by Gupta and where Defendant worked)

with long jail terms unless they confirmed the prosecutor's version of events. Defendant also argues that he was targeted because Defendant Gupta left the country and the Government needed to make "someone . . . pay for this." Def.'s Supp. at 7 (d/e 93). Defendant further claims he was targeted based on his race. Id. at 8 (out of 40 employees, he was the only one indicted).

Additionally, Defendant argues that the Government generated unfavorable pre-indictment publicity by announcing the search of the Nutrition Clinic to the press; unsealing the affidavit forming the basis of Defendant Gupta's arrest warrant and releasing it to the press; and renting a billboard that published a picture of Defendant Gupta and identified Gupta as a perpetrator of a massive fraud.

Defendant further argues that the Government engaged in misconduct aimed at preventing a fair trial. In particular, Defendant points to the e-mails which led to the dismissal of the Indictment and the Government's changing story about the e-mails and whether privileged e-mails were accessed. Compare Gov't Resp. to Def. Mot. to Dismiss Indictment (d/e 75) (October 9, 2012) (stating that Microsoft produced an overbroad response, the FBI

filtered the e-mails, and no violation of the attorney-client privilege occurred) <u>with</u> Gov't Mot. to Dismiss the Indictment (d/e 77) (stating that new information suggested the attorney-client privilege had been violated and the e-mails remained on a government computer) <u>and</u> Gov't Supp. Clarification (d/e 81) (stating that Microsoft complied with the search warrant's request and the production was not overbroad).

Defendant also claims as misconduct the plea offer the Government made to Defendant. <u>See</u> Letter attached to Supp. (d/e 93-4). The Government advised Defendant he could be facing 360 months to life based on a number of factors, including the amount of loss, the number of victims, and the abuse of trust. The Government advised Defendant that if he fully cooperated in the matter and agreed to testify against Defendant Gupta and provide any evidence or information he may have on Gupta's whereabouts, the guideline range could be 37 to 46 months and the Government would seek approval to file a motion requesting that the court impose a sentence below the anticipated guideline range.

Finally, Defendant challenges events that occurred regarding Defendant Gupta. Defendant challenges the search of the

Nutrition Clinic, arguing that Defendant Gupta's rights were violated. Defendant asserts that the effect of the illegal search was transmitted to Defendant when he was charged as a co-conspirator. Defendant also challenges the legality of the Government's interview with Defendant Gupta.

The Government responds that Defendant's accusations are unfounded, baseless, and frivolous. Gov't Sur-Reply at 1 (d/e 97). The Government also argues that none of Defendant's claims are sufficient to warrant expunction. Id. at 2.

As an initial matter, Defendant lacks standing to challenge violations of Defendant Gupta's Constitutional rights. See, e.g., United States v. Swift, 220 F.3d 502, 510 (7th Cir. 2000) ("A defendant must show a violation of 'his (and not someone else's)' rights"), quoting Minnesota v. Carter, 525 U.S. 83, 89 (1998)).

As for Defendant's remaining claims, the Court notes that other courts have allowed motions to expunge where an arrest was unlawful, where the arrest was for the purpose of harassment, and where the statute under which the arrest was made was subsequently held unconstitutional. See Linn, 513 F.2d at 927 (finding that an acquitted defendant was not entitled to have the

records expunged where the arrest was lawful, the charges were lawful, and there was nothing to indicate harassing action by any government agency). The Seventh Circuit has held that relief is not limited to those three situations. Diamond, 649 F. 2d at 498 (noting that those situations cited in Linn are only illustrative of the situations in which expunction has been found appropriate).

Nonetheless, Defendant has not presented competent evidence to show that his arrest was unlawful, that his arrest was for purposes for harassment, or that the Indictment was defective. Nor has Defendant shown the existence of another type of circumstance that would warrant expunction. See, e.g., Sullivan v. Murphy, 478 F.2d 938, 968-73 (D.C. Cir. 1973) (class action challenging the validity of mass arrests made without probable cause in which the court ordered that the arrest records be expunged), cert. denied, 414 U.S. 880 (1973); United States v. McLeod, 385 F.2d 734, 750 (5th Cir. 1967) (in an action brought by the Attorney General, the court ordered that the arrest records of a group of civil rights workers who had been arrested be expunged because the arrests were for the purpose of interfering with the right to vote); United States v. Gold, No. 77 CR 1073,

1995 WL 307296, at *3 (N.D. Ill. Feb. 15, 1995) (granting motion to expunge the indictment where the indictment was obtained in violation of the defendant's Fifth Amendment right to an impartial grand jury when another attorney acted as both the prosecutor and a witness before the grand jury; the court found the government did not subsequently obtain an indictment from an unbiased grand jury and the indictment would hinder the defendant's law career); United States v. Van Wagner, 746 F. Supp. 619, 621 (E.D. Va. 1990) (arrest records expunged where the government dropped all charges and the government concluded the defendant was innocent); United States v. Benlizar, 459 F. Supp. 614 (D.D.C. 1978) (expunging a criminal record because of misconduct by the government in obtaining the conviction, including a DEA agent giving misleading testimony, the DEA's failure to comply with a mandate to promulgate regulations to preserve discoverable evidence, and DEA agents destroying crucial evidence; the court also found that the arrest and illegal conviction record would cause harm of a serious nature to the defendant, including affecting his ability to become a citizen); Kowall v United States, 53 F.R.D. 211, 212 (W.D. Mich. 1971) (in a § 2255 case, the

defendant asserted "his arrest, conviction, and sentence for failure to report for induction, which arose out of his local board's declaration that petitioner was a delinquent, were invalid under Gutknecht v. United States, 396 U.S. 295 [(1970)]" and, therefore, the court set aside the conviction and ordered the arrest record expunged); Hughes v. Rizzo, 282 F. Supp. 881, 885 (E.D. Penn. 1968) (in an action under the Civil Rights Act, the court ordered expunction of records pertaining to invalid mass arrests that constituted harassment).

The one argument Defendant has supported with evidence is his argument that the records should be expunged because of the violations of Defendant's attorney-client privilege. This Court found "violations of the Attorney Client Privilege occurred and that any violation of that Privilege is a serious matter." Text Order of October 12, 2012. The Court did not specifically find, and the Government did not concede, that a constitutional violation occurred. Even assuming this conduct constituted a constitutional violation, there must be a logical relationship between the injury and the requested remedy. See, e.g., Doe, 606 F.2d at 1231 (citing McLeod, 385 F.2d at 749-50 (finding that full

relief for illegal mass arrests required expunging the records of the arrests and convictions)). There is little connection here between what appears to have been an inadvertent violation of the attorney-client privilege and expunging what was otherwise a valid arrest and Indictment.

Consequently, Defendant has failed to demonstrate the type of unlawful or harassing conduct that would support expunging the judicial record. Further, the Court finds it may be beneficial to leave the judicial records open so that an employer could easily verify that the case has been dismissed. See United States v. Carson, 366 F. Supp. 2d 1151, 1159 (M.D. Fla. 2004) (noting that a "sealed record might provoke more questions as to the reasons").

Finally, the Court finds that expunging the judicial records will likely not give Defendant the relief he seeks. Defendant remains an alleged co-conspirator through his association with Defendant Gupta, who remains a fugitive. If Gupta is found and tried, the Government intends to present evidence that Defendant was a co-conspirator and will seek to admit Defendant's statements at Defendant Gupta's trial. Therefore, expunging the judicial records now could be undone by future proceedings.

Moreover, the information on the Internet about Defendant's arrest and Indictment includes articles and information on several sites, including www.justice.gov; www.fbi.gov; www.wifr.com; and medicaresmostwanted.blogspot.com.  In addition, because the Court has no authority to expunge executive branch criminal records, those records will remain available.  Therefore, expunging the judicial records will not help Defendant because other information about his arrest and Indictment will remain available. See United States v. Barnes, No. 3:93-mj-33-CAN, 2012 WL 6624198, at *3 (N.D. Ind. Dec. 19, 2012) (noting that, because the court did not have the authority to expunge executive branch criminal records, it would be a "hollow victory" even if the court granted the request to expunge the court documents because the executive branch documents would remain).

That being said, the Government agreed at the hearing to remove the link to the press release about this case that is on the U.S. Attorney's website.  The Government also agreed to ask the FBI to remove the link to the press release on the FBI's website.  The Court appreciates the Government's willingness to do so.

In sum, the Court finds that Defendant has failed to demonstrate that the danger of unwarranted adverse consequences outweigh the public interest in maintenance of the records.

## IV. CONCLUSION

For the reasons stated, Defendant Rakesh Wahi's pro se Petition for Expungment of Record (d/e 86) is DENIED.

ENTER: April 24, 2015

FOR THE COURT:

    s/Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE